IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | |
|---|---|
| JESSICA CHANDLER and <br> ADAM KING, on behalf of themselves <br> and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ARVEST BANK, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 3:18-CV-00043-DPM <br> ) <br> ) <br> ) <br> ) <br> ) |

**STIPULATED ORDER REGARDING DISCOVERY PLAN
FOR ELECTRONICALLY STORED INFORMATION**

The parties have stipulated and agreed to entry of this consent order, which meets the Court's approval. Therefore, it is ORDERED as follows:

1. <u>Electronic Discovery: The Collection and Culling of ESI</u>: The following parameters govern the handling and production of electronically stored information ("ESI") in this matter:

    (a). Counsel for Arvest and Plaintiffs will correspond regarding custodians and sources of documents from which they are collecting ESI for production in the above-captioned action. The parties will work in good faith to identify, discuss, agree upon and revise, if necessary, the custodians and sources of documents, including search terms, to avoid an unduly burdensome production or retrieving a large quantity of non-responsive ESI.

    (b). If the parties reach an impasse regarding a the collection or production of ESI, they should file a joint report explaining the disagreement. The parties should file this paper under the CM/ECF event called "Joint Report of Discovery Dispute." The joint

report must not exceed ten pages, excluding the style and signature block. Each side gets five pages. The parties should not file a motion asking for more pages. Use double spacing and avoid footnotes. Attach documents (such as disputed written discovery or responses) as needed. Redact any attachments as required by Federal Rule of Civil Procedure 5.2 to protect confidential information. The parties should file any joint report sufficiently before the discovery cutoff so that the dispute can be resolved, and any additional discovery completed, without undermining other pretrial deadlines. The Court will rule or schedule a hearing. The parties should alert the law clerk on the case to the joint report's filing. If a dispute arises during a deposition, call chambers so the Judge can rule during the deposition. By entering into this stipulation, no party waives its right to seek assistance from the Court on any matter relating to the handling and production of ESI not specifically addressed herein.

(c). Each party shall make a reasonable and diligent effort to search for and collect reasonably accessible and responsive ESI from each of its designated custodian's e-mail systems utilized during the relevant time period, ESI stored on each custodian's computer hard-drive, ESI on shared drives and repositories identified by relevant custodians as having been utilized during the relevant period, and other locations used by each custodian to store potentially responsive ESI. Arvest will filter the ESI it collects using search terms and will provide a list of its search terms to Plaintiffs if it has not done so already. Plaintiffs will provide Arvest with an explanation of how they are collecting or filtering the data, whether through the use of search terms or another method, and provide Arvest with its list of search terms, where applicable. If either party seeks modification of the other party's list of search terms, the party shall make a written

request for modification of the search term list within thirty (30) days of receiving the list. The parties will meet and confer in good faith to address any requested modification thereafter. If a party identifies ESI from its designated custodians or other sources that may contain responsive data that is not reasonably accessible, it will provide the other party a description of the ESI that it claims is not reasonably accessible.

(d). In addition, the parties will run search terms to identify and collect reasonably accessible, non-objectionable and responsive ESI from their servers, electronic document repositories, or any other electronic file storage media, relevant shared network folders or repositories not attributed to any specific custodian, as applicable. If Arvest identifies a shared repository from which it cannot collect data due to the nature of its organization in a database or its voluminous nature, Arvest will identify this shared repository and propose to Plaintiffs a method for collection of that database, and the parties will meet and confer in good faith about the most reasonable method to collect and review the data.

(e). Arvest agrees to collect reasonably accessible, non-objectionable, non-duplicative responsive hard copy documents and produce it in Group IV, single-page TIFF format (Group IV, 300 DPI resolution) with corresponding multi-page OCR text files along with Summation standard load files or Concordance standard load files as described below. Arvest will also provide the following fields in a load file with each hard copy production:

(i). Custodian (Name of Custodian from which the file is being produced);

(ii). Bates Begin (Beginning Production Number);

(iii). Bates End (Ending Production Number);

(iv). Attach Begin (Beginning Attachment Range Number), where available;

(v). Attach End (Ending Attachment Range Number) where available;

(vi). Doc Properties (populated with the confidentiality status or redacted if the document was subjected to redaction); and

(vii). Page Count.

Production of redacted documents are subject to the same criteria as above.

(f). The parties may exclude system, executable, and other non-content files from electronically stored information or data by applying the current standard NIST list Alternatively, the parties may collect documents by including, rather than excluding, file types for collection. Each party agrees to provide a list of file types collected to the other party, and to meet and confer in good faith if there are any file types excluded that the other party reasonably believes contains responsive information. The parties will work together to determine reasonable methods of production for these file types.

(g). For non-e-mail data, where multiple custodians each possess their own copies of an identical document, the document shall be produced once for each custodian in possession of the document. In order to reduce the volume of documents reviewed and produced, each party can, if it wishes, globally de-duplicate e-mail data using the MD5 hash value. De-duplicated originals shall be securely retained and made available for inspection and copying upon reasonable request.

2. <u>Electronic Discovery: Production Format</u>: The following parameters govern the production of documents that were originally maintained as ESI:

(a). The native format of all non-e-mail, unredacted ESI will be maintained by each party and non-e-mail, unredacted ESI productions shall be produced in single-page

TIFF (Group IV, 300 DPI resolution) format and corresponding document-level extracted text format with the following metadata fields, to the extent they exist, provided in a Summation standard load file for Plaintiffs and in Concordance format for Arvest:

    (i). Custodian (Name of Custodian from which file is being produced);

    (ii). Author (Author of file from properties);

    (iii). Doc Title (Title of the document from document properties)

    (iv). Doc Subject (Subject of file from properties);

    (v). Created Date (Date the file was created);

    (vi). Last Modified Date (Date the file was last modified);

    (vii). Last Saved By (Name of user who last saved the file);

    (viii). Doc Type (Email, Attachment or Loose File);

    (ix). File Description (the description or comment associated with the file in a file management system);

    (x). File Name (Name of the file);

    (xi). Full Path (Full path location to where the file resided);

    (xii). File Ext (Extension for the file);

    (xiii). MD5 Hash (or equivalent);

    (xiv). Bates Begin (Beginning Production Number);

    (xv). Bates End (Ending Production Number);

    (xvi). Attach Begin (Beginning Attachment Range Number);

    (xvii). Attach End (Ending Attachment Range Number, i.e., parentage is maintained);

    (xviii). Page count (for documents that are TIFFed);

(xix). For Excel spreadsheets and other native files, a Native link (path to native file as included in the production e.g. d:\PROD001\natives\ABC00015.xls);

(xx). Created Time (time the file was created);

(xxi). Last Modified time (time the file was last modified);

(xxii). Attachment name (original file name of all attachments to a parent document);

(xxiii). Doc Properties (populated with the confidentiality status or redacted if the document was subjected to redaction); and

(xxiv). Duplicate Source (Field with data showing all other custodians who had a copy of the document that is not produced pursuant to the global de-duplication done as provided for by paragraph 1(h) above).

(b). Production of redacted, non-e-mail ESI will be subject to the same criteria as above along with the inclusion of the field Redacted which will contain the value "Yes" for all documents with redactions. The metadata field "Body Text" will not be provided for Plaintiffs and need not be produced for Arvest provided that the document-level extracted text format is linked to the document. Multi-page OCR text files will be provided. In addition, native files shall be produced for any file with a file extension indicating it is a spreadsheet (e.g., .xls, .xlsx) or a slideshow presentation (e.g., .pps, ppt., .pages) or a media or photo file (e.g., .wav, wmv., .jpg., .psd). In addition, specific metadata fields will not be provided when production of such information could, in the good faith view of the parties' counsel, reveal privileged information. All date fields will be produced in MM/DD/YYYY format. The time will not be included in the date fields.

(c). The native format of all unredacted electronic mail shall be maintained by the parties and unredacted electronic mail shall be produced in single-page TIFF (Group IV, 300 DPI resolution) format and corresponding document-level extracted text with the following metadata fields provided in a Summation standard load file for Plaintiffs and in Concordance format for Arvest:

(i). Custodian (name of custodian from which file is being produced);

(ii). Author (FROM field);

(iii). CC (copy);

(iv). BCC;

(v). Recipient (TO field);

(vi). MD5 Hash Value or Equivalent;

(vii). Date Sent (date the email was sent);

(viii). Email Folder (The folder within the mailbox where the message resided);

(ix). Bates Begin (beginning production number);

(x). Bates End (ending production number);

(xi). Attach Begin (beginning attachment range number);

(xii). Attach End (ending attachment range number);

(xiii). Page count (for documents that are TIFFed);

(xiv). Subject;

(xv). Time sent (time the e-mail was sent);

(xvi). Date Received (Date the e-mail was received);

(xvii). Time Received (time the e-mail was received);

(xiii). Attachment name (original file name of all attachments to a parent document);

(xix). Doc Properties (populated with the confidentiality status or redacted if the document was subjected to redaction); and

(xx). File Ext (extension for the file).

(d). Production of redacted, e-mail ESI will be subject to the same criteria along with the inclusion of the field Redacted which will contain the value "Yes" for all documents with redactions. The metadata field "Body Text" will not be provided for Plaintiffs and need not be produced for Arvest provided that the document-level extracted text format is linked to the document. Multi-page OCR text files will be provided. All date fields will be produced in MM/DD/YYYY format. The time will not be included in the date fields.

Electronic mail shall be produced along with attachments in sequential order as part of a family, maintaining the parent-child relationship, if any part of the message or any attachment is responsive, relevant and not privileged. As a general matter, subject to specific review, a message and its attachments shall not be withheld from production based on the fact that one or more attachments are privileged, irrelevant or non-responsive. To the extent the message or one or more attachments is privileged, irrelevant, or non-responsive, the responsive, non-privileged documents shall be produced and the privileged, irrelevant, or non-responsive documents shall, at the producing party's option, either: (A) be redacted and shown on a log with corresponding Bates numbers; or (B) be removed and replaced with a placeholder indicating the

documents were withheld and the removed documents shown on a log with control numbers assigned by the producing party.

For the purposes of this litigation, the date of an email shall be "Date Sent" and for word processing documents "Date Last Modified."

(e). The parties acknowledge that Excel spreadsheets shall be produced both in native and TIFF formats or, if the party wishes, in native with a TIFF placeholder. To the extent possible a native version of all ESI will be maintained by the parties, and each party will consider reasonable requests to make available the native versions of any produced document, subject to any redactions.

(f). All compressed or zipped ESI shall be unzipped or decompressed before production. To the extent an electronic file contains embedded files, or links to other files, those files shall be produced as attachments in sequential order as part of a family, maintaining the parent-child relationship. Should this requirement present a problem for any particular file types, the parties agree to meet and confer in good faith regarding the production of those file types.

(g). The parties agree to meet and confer in good faith if there are any other file types that encounter difficulties in the TIFFing process and will discuss native production of those files if necessary.

(h). For the production of ESI in Concordance format for Arvest, three load files must be provided for all document productions to that party: (i) Standard Concordance load file (.dat) containing the fields specified in paragraph 2(a) and (b) above, with Field Names in first row. The .dat file should be provided with the following hierarchy of delimiters: Comma (020), Quote þ (254), Newline ® (174) (ii) Standard

Opticon load file (.opt) linked to Concordance load file via "BATESBEGIN" field positioned in the first field. The "Path": field should contain the relative path to the appropriate TIFF file (.tif); and (iii) .lfp load file.

(i). For the production of ESI in Summation format for Plaintiffs, the following load files (examples attached) will be produced:

 (i). DII file complaint with Summation to load the images. DII files contain unitization information about where a document begins and ends;

 (ii). LST file for loading the extracted text/ocr;

 (iii). DII file containing the fields specified in paragraph 1(f), 2(a) and 2(c) above. The .DII file should be provided with the following hierarchy of delimiters:@Fulltext (OCR Documents attached), @T (Image Tag), @C (Column to Link) for all fields, @D (Default Directory), @I (Image Location), @EDOC (Native file link)image file name; and

 (iv) A document level text file (.TXT) will be provided containing the extracted text (or OCR as applicable). The file will be named after the Beginning Bates number. Where a document contains redactions, OCR text will be provided.

(j). Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" (stamped) onto the image at a location that does not obliterate, conceal, or interfere with any information from the source documents. No other legend or stamp will be placed on the document image other than a confidentiality legend or redactions (where applicable). The confidential legend

shall be "burned" (stamped) onto the image at a location that does not obliterate or obscure any information from the source document.

  (k).   Each page image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension ".TIF." Document level text files should be named after the beginning Bates numbers of each document.

  (l).   The parties will honor reasonable and specific requests for the production of color images to the extent those requests are not unduly burdensome.

  (m).   The parties will, upon reasonable request, make originals of any produced document available for inspection and copying, subject to appropriate redactions.

3.   This order relates solely to the general protocol of identifying and producing ESI. Any party may bring a motion to modify or clarify the application of this Plan to particular ESI or otherwise.

4.   To the extent it would be impractical to produce ESI as it is kept in the normal course of business because of complexities associated with certain scheduling programs (such as Primavera), accounting systems, audio or video files, mapping systems, or databases (such as MS Access, Oracle and Microsoft SQL server), the parties are ordered to notify the propounding party and are ordered to inform the propounding party whether the parties have generated reports in the normal course of business using those programs or systems. The parties will meet and confer concerning the manner of production of those reports.

  SO ORDERED this the 30th day of July, 2018.

*D.P. Marshall Jr.*
D. P. MARSHALL, JR.
UNITED STATES DISTRICT JUDGE